(C.D. 2225)

IMPORT-EXPORT SERVICE OF NEW JERSEY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 5, 1961)

*Sharretts, Paley & Carter* for the plaintiff.
*George Cochran Doub*, Assistant Attorney General, for the defendant.

Before JOHNSON, DONLON, AND RICHARDSON, Judges; DONLON, J., concurring

JOHNSON, Judge: The merchandise involved in this case consists of tungsten scrap and tungsten sludge, imported from Canada on or about June 19, 1957. It was assessed with duty at 23½ per centum ad valorem under paragraph 316(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as scrap, containing more than 50 per centum of tungsten. It is claimed that the merchandise is American goods returned, entitled to entry under paragraph 1615(f) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 and the Customs Simplification Act of 1953.

Counsel have submitted this case on a stipulation reading as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for plaintiff and the Assistant Attorney General for the United States, subject to the approval of the Court, that the merchandise here in issue consists of tungsten scrap and tungsten sludge derived from the processing in Canada of tungsten rods manufactured in the United States and exported to Canada with benefit of drawback paid on the tungsten content thereof. That the tungsten, the subject of this importation, has not been advanced in value or improved in condition by any process of manufacture or other means, but duty was assessed upon said tungsten at 23½ per centum ad valorem under the provisions of paragraph 316(b) of the Tariff Act of 1930 as amended.

IT IS FURTHER STIPULATED AND AGREED that the duty was imposed at the rate provided in Paragraph 316(b) by reason of the failure of the importer to comply with sections 10/1–10/3 of the Customs Regulations of 1954 then in effect, that if said Regulation had been complied with, the merchandise would have been assessed with duty in an amount equal to the estimated drawback paid on the like amount of tungsten previously exported in rod form, as provided in section 1615(f) of the Tariff Act of 1930.

IT IS FURTHER STIPULATED AND AGREED that the importer has now complied with the Customs Regulations which were in effect at the time of importation.

IT IS FURTHER STIPULATED AND AGREED that all papers contained in the official entry jackets be received in evidence.

Counsel for plaintiff limits the protest to the claim that:

"The merchandise is American goods returned and is entitled to entry under paragraph 1615(f) of the Tariff Act of 1930, as amended, and is subject to duty in the amount of its proportionate share of the drawback allowed on the exportation from the United States of the tungsten bars from which the scrap and sludge were derived."

IT IS FURTHER STIPULATED AND AGREED that the protest shall be submitted on this stipulation.

Paragraph 1615 of the Tariff Act of 1930, as amended, provides as follows:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means; [Free.]

\*        \*        \*        \*        \*        \*        \*

(e) The foregoing provisions of this paragraph shall not apply to—
(1) Any article upon which an allowance of drawback has been made under section 313 of this Act or a corresponding provision of a prior tariff Act, unless such article is in use at the time of importation as the usual container or covering of merchandise not subject to an ad-valorem rate of duty;

\*        \*        \*        \*        \*        \*        \*

(f) Upon the entry for consumption or withdrawal from warehouse for consumption of any article previously exported, which is excepted from free entry under this paragraph by the foregoing subparagraph (e) and is not otherwise exempted from the payment of duty, there shall be levied, collected, and paid thereon, in lieu of any other duty or tax, a duty equal to the total duty and internal-revenue tax, if any, then imposed with respect to the importation of like articles not previously exported from the United States, but in no case in excess of the sum of customs draw-back, if any, proved to have been

allowed upon the exportation of such article from the United States plus the amount of the internal-revenue tax, if any, imposed at the time such article is entered for consumption or withdrawn from warehouse for consumption upon the importation of like articles not previously exported from the United States. * * *

\* \* \* \* \* \* \*

Plaintiff's claim is that the imported merchandise, tungsten scrap and tungsten sludge, is the article or a portion of the article previously exported, tungsten rods, and that said merchandise is classifiable under paragraph 1615 (f), *supra*, and is subject to duty only in the amount of a proportion of the drawback allowed on exportation of the rods. No brief has been filed by plaintiff in support of its position nor has the Government submitted one in defense of the collector's classification. Apparently, both parties have viewed the issue as involving solely compliance with the regulations. However, before plaintiff can be entitled to judgment, it must be established that the imported merchandise does, in fact, fall within the purview of paragraph 1615 (f), *supra*.

According to the record presented, the tungsten rods from which the imported merchandise was derived had been exported to Canada with benefit of drawback. It is evident, therefore, that the tungsten rods were manufactured in the United States with the use of imported merchandise, since drawback is allowed under section 313 of the Tariff Act of 1930 only "Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise." Such allowance of drawback is made upon the articles manufactured in the United States and not upon the imported materials used in said manufacture. *Chas. Adler's Sons, Inc.* v. *United States*, 21 C.C.P.A. (Customs) 573, T.D. 46992; *Nordberg Manufacturing Company* v. *United States*, 43 Cust. Ct. 235, C.D. 2133. Thus, the "article previously exported," within the meaning of paragraph 1615 (f), is the tungsten rods, not tungsten as material.

While the exported tungsten rods were manufactures of the United States, they would not have been entitled to free entry under paragraph 1615 (a), *supra*, had they been returned, without having been advanced in value or improved in condition, because of the limitation in subparagraph (e) (1), *supra*. They would, however, have been entitled to entry under subparagraph (f) and subject to a duty equal to the duty then imposed with respect to the importation of like articles not previously exported but not in excess of the drawback previously allowed upon their exportation.

In the instant case, however, it is not the tungsten rods which have been returned but tungsten scrap and tungsten sludge derived from

the processing of the rods in Canada. The question before us is whether said scrap and sludge can be considered the article previously exported within the meaning of paragraph 1615(f), *supra.*

In *United States* v. *Tower & Sons*, 9 Ct. Cust. Appls. 135, T.D. 37981, which involved paragraph 404 of the Tariff Act of 1913, a predecessor of paragraph 1615(a) of the present tariff act, it was held that certain articles derived from the processing of tungstic acid in Canada were entitled to free entry as American goods returned and others were not. The court described the processing in Canada as follows (p. 136):

* * * It [tungstic acid in powder form] is first dissolved in ammonia and the resultant insoluble materials filtered out. This rejected material is called an "insoluble residue" and consists of small lumps of clay-like material said to contain tungsten, lime, and other impurities. This is one of the substances imported and the subject of this appeal. It is represented by Exhibit 1 herein. While the record does not fully disclose the facts, it may fairly be inferred that the next applied process produces metallic tungsten cast in small ingots, the clipped ends of which, consisting of small metallic cubes which likewise were imported into this country, constitute the second class of substances the subject of this appeal and are represented by Exhibit 2 herein. The tungsten ingots apparently are then by various processes of wire drawing made into wire of different sizes, some about one-sixteenth of an inch in thickness and others of the fineness of human hair. Scraps of such wire constitute the third class of substances, the subject of this appeal, and are represented by Exhibit 3 herein.

The court then held that the process of producing the "insoluble residue" was but a process of segregation or elimination, not of manufacturing; that no new article of manufacture was produced; and that, therefore, said residue was entitled to free entry as American goods returned. On the other hand, it was held that the processes which had produced the metal ingots and the wire were manufacturing processes; that said articles were manufactures of Canada and not of the United States; and that, therefore, the residues returned to the United States were not entitled to free entry as American goods returned.

In *Burgess Battery Co.* v. *United States*, 13 Cust. Ct. 37, C.D. 866, appeal dismissed 32 C.C.P.A. 207, it was held that zinc scrap consisting of the residue from the manufacture of battery cups in Canada from zinc sheets manufactured in the United States was entitled to free entry as American goods returned. The court pointed out that the processes applied to the exported article insofar as they affected the imported article were processes of segregation or elimination and not processes of manufacture; that the zinc scrap had attained its status as zinc through a manufacturing effort of the United States; and that regardless of whatever manufacturing effort was expended

thereon in Canada, it still remained zinc manufactured in the United States.

The record in the instant case does not show what was done to the tungsten rods in Canada but indicates merely that the tungsten scrap and tungsten sludge were derived from the American-manufactured tungsten rods. In our view, this is insufficient to establish that the imported scrap and sludge are the same articles or residues of the articles previously exported. Note, in this connection, *A. F. Burstrom* v. *United States*, 44 C.C.P.A. (Customs) 27, C.A.D. 631, where it was held that the conversion of steel ingots into steel slabs in Canada was more than an alteration of the ingots; that the slabs were not the same articles as the ingots; and that they were not entitled to entry under paragraph 1615(g) of the Tariff Act of 1930, as amended, upon the payment of duty upon the value of the alterations only.

We hold that the record presented is insufficient to establish that the imported merchandise consists of the "article previously exported," within the meaning of paragraph 1615(f), *supra*, and not a new article manufactured in Canada. Therefore, the merchandise is not entitled to the benefit of the provisions of said paragraph. The protest is overruled and judgment will be rendered for the defendant.

### CONCURRING OPINION

Donlon, Judge: I concur. I do so because, as the majority opinion points out, this is a situation governed by subparagraph (f) of paragraph 1615 of the Tariff Act of 1930, rather than by subparagraph (a). Plaintiff's sole protest claim is under subparagraph (f).

The cases construing subparagraph (a) of paragraph 1615, or predecessor provisions of earlier tariff acts, are not pertinent. Sludge and scrap may be waste, or residue, within the rule that was laid down in *United States* v. *Tower & Sons*, *supra*, and *Burgess Battery Co.* v. *United States*, *supra*, construing subparagraph (a). They are not the "article previously exported" upon which "allowance or drawback has been made."